UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,    )   <br>    ) <br>    Plaintiff,    ) <br>    ) <br>    v.    ) <br>    ) <br> AARON C. SMITH,    ) <br>    ) <br>    Defendant.    ) | Case Nos. 09-cr-20014-JES-JEH & <br> 09-cr-20015-JES-JEH |

## ORDER AND OPINION

This matter is now before the Court on Defendant Smith's Motions (Docs. 19, 22) to Reduce Sentence Pursuant to 18 U.S.C. § 3582, the United States' Response (Doc. 24), and Defendant's Reply (Doc. 25). For the reasons that follow, Defendant's Motions (Docs. 19, 22) to Reduce Sentence Pursuant to 18 U.S.C. § 3582 are GRANTED.

### BACKGROUND

Defendant Smith is 69 years old and is currently serving a 25-year term of imprisonment in the Illinois Department of Corrections for his sixth DUI conviction. He has been in custody since February 24, 2009 and is due to be released on June 4, 2020. Doc. 22, at 1–2. When Defendant Smith committed his state offense, he was on supervised release in this district. Doc. 1. A petition to revoke Defendant's supervised release was filed based on his new law violation, and on July 31, 2018, Defendant was sentenced to 30 months' imprisonment, to run concurrently with the sentence he is serving in the Illinois Department of Corrections. In light of the ongoing COVID-19 pandemic, Defendant moves for an order reducing his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), often referred to as the compassionate release statute. Doc. 22. The United States responded to Defendant's Motion by asserting Defendant failed to exhaust administrative remedies and further opposes the request on the merits. Doc. 24.

1

## LEGAL STANDARD

"[A] judgment of conviction that includes . . . a sentence [of imprisonment] constitutes a final judgment" that can be modified in only certain enumerated circumstances. 18 U.S.C. § 3582(b). As relevant here:

> [a] court, upon motion of the Director of the [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable if it finds that (i) extraordinary and compelling reasons warrant such a reduction

and that a reduction is "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A). "The defendant has the burden to show he is entitled to a sentence reduction." *United States v. Ebbers*, No. (S4) 02-CR-1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020); *cf. United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.").

## DISCUSSION

Defendant contends that he should be released pursuant to § 3582(c)(1)(A)(i) because he faces a high risk of death or serious injury from COVID-19 due to his advanced age and medical conditions. Doc. 22, at 2.

**Exhaustion**

Section 3582(c)(1)(A) contains an exhaustion requirement: before a defendant can bring his own motion, he must ask the warden of his facility to bring such a motion. If 30 days pass without a response, he can file a motion in court. *Id.*

Here, Defendant admits he has not exhausted his administrative remedies but argues the

exhaustion requirement should be excused in his case because he is not able to submit a request for compassionate release until he has entered the custody of the BOP. Doc. 22, at 2. Because waiting until his arrival at a BOP facility might expose him to COVID-19, Defendant asks the Court to waive the exhaustion requirement. *Id*. at 4–5. In its Response, the United States acknowledges Defendant is presently unable to comply with the exhaustion requirement because he has no warden to send his request for compassionate release to. Doc. 24, at 11. Nonetheless, the United States persists in arguing the exhaustion requirement should not be excused. Rather, the United States asserts Defendant may exhaust his administrative remedies once he enters the custody of the BOP. *Id*. ("Allowing the defendant to avoid transfer to the BOP due to the minimal risk he may be exposed and become infected by COVID-19 in whatever facility he is sent to is simply improper in light of the statutory requirements of Section 3582(c).").

Section "3582(c)(1)(A) does not require the Court to wait to consider a compassionate release request if there is a credible claim of serious and imminent harm from this pandemic." *United States v. Coles*, No. 00-CR-20051, 2020 WL 1976296, at *5 (C.D. Ill. Apr. 24, 2020). Here, Defendant has not exhausted his administrative remedies because none are available to him at this time. If Defendant were operating under the more punitive requirements of the PLRA, his failure to exhaust would be excused. *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). The same result should obtain here, where the First Step Act expanded avenues for inmates to request compassionate release. *See Coles*, No. 00-CR-20051, 2020 WL 1976296, at *4. Once again, the United States' response to Defendant's administrative remedies argument fails to consider the practical and logistical difficulties prisoners face when attempting to pursue administrative remedies without the assistance of counsel and while the institutions they are housed in are on lockdown or quarantine. *See also United States v. Johnson*, No. 12-20056, ECF Doc. 69, at 5

(C.D. Ill. May 21, 2020); *McCaa v. Hamilton*, No. 19-1603, 2020 WL 2554402, at *4 (7th Cir. May 20, 2020) (noting, in the context of the current pandemic, that "[i]t may be that during this crisis, courts need to adjust our expectations and adapt to new conditions in such cases, including flexibility on non-jurisdictional dead-lines and perhaps additional efforts to recruit counsel"). In this case, requiring Defendant to wait until his arrival at a BOP facility in order to submit a request for compassionate release would, at best, result in delay and possible exposure to COVID-19 while his request is processed. At worst, Defendant would be transferred to another facility within the 30-day review period, creating a real possibility that any administrative remedy would be effectively unavailable to him until it is too late. The Court finds the exhaustion requirements in 18 U.S.C. § 3582(c) may be excused and should be excused in this case, and thus proceeds to the merits of Defendant's Motion.

**Merits**

Defendant argues that he has shown that extraordinary and compelling reasons warrant his release because he is at risk of contracting COVID-19 in the BOP, and the risk of him suffering complications or death due to the virus is increased due to his advanced age and immunocompromised state. Doc. 22, at 6–17.

The United States argues that Defendant does not qualify for compassionate release because he has failed to show extraordinary and compelling circumstances justifying his release. Doc. 24, at 18–22. Specifically, the United States argues Defendant failed to support his assertions of medical vulnerability with medical records, and even if he produces medical records supporting his claim of medical vulnerability, his age and prior treatment do not amount to extraordinary or compelling reasons supporting early release. *Id*. at 19. Finally, the United States argues Defendant would present a risk of danger to the community if released given

Defendant's history and characteristics, and thus release is not warranted under the § 3553(a) factors. *Id.* at 27.

The compassionate release statute directs the Court to make three considerations: 1) whether extraordinary and compelling reasons warrant a sentence reduction; 2) whether a reduction is consistent with the factors listed in 18 U.S.C. § 3553(a); and 3) whether a reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1).

The Sentencing Guideline's policy statement defines what constitutes extraordinary and compelling reasons that warrant a sentence reduction. *See* U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018). Application notes explain that the medical condition of the defendant (i.e., if he suffers from a terminal illness or a serious physical or medical condition that "substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover"), his age (i.e., if he is 65 and declining in health and has served a large portion of his sentence already), or his family circumstance (i.e., if the caregiver for his minor children dies or becomes incapacitated) can constitute extraordinary and compelling reasons warranting release. *Id.* § 1B1.13 cmt. n.1(A)–(C).

Previously § 3582(c)(1)(A) allowed only the BOP to bring a motion for compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A) (effective Nov. 2, 2002 through Dec. 20, 2018). The Sentencing Commission has not updated its policy statement to reflect that a defendant can make his own motion for a sentencing reduction. Some courts have held that this means there is currently no policy statement with which sentencing reductions under § 3582(c)(1)(A) must be consistent. *See, e.g.*, *United States v. Redd*, No. 1:97-CR-00006-AJT, 2020 WL 1248493, at *6

(E.D. Va. Mar. 16, 2020). This Court has previously adopted this approach. *See United States v. Seggebruch*, No. 15-cr-20034, ECF Doc. 113 (C.D. Ill. May 15, 2020); *United States v. Brooks*, No. 07-20047, ECF Doc. 67 (C.D. Ill. May 15, 2020). Thus, a court may find that extraordinary and compelling reasons exist based on facts and circumstances other than those set forth in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C), and without the BOP's motion or express finding. *See, e.g.*, *Redd*, No. 1:97-CR-00006-AJT, 2020 WL 1248493 at *6.

"The mere presence of COVID-19 in a particular prison cannot justify compassionate release—if it could, every inmate in that prison could obtain release." *See, e.g., United States v. Melgarejo*, No. 12-cr-20050, ECF Doc. 41 at p. 5 (C.D. Ill. May 12, 2020). Rather, "a prisoner [may] satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus." *Id*. at 5–6.

Here, the Court believes Defendant has met his burden to establish that extraordinary and compelling reasons justify his release from prison. First, the BOP is facing serious outbreaks of COVID-19 infections for those in its care. *See* https://www.bop.gov/coronavirus/ (last visited May 28, 2020) (1,747 inmates and 187 staff with confirmed positive results for COVID-19, 3,232 inmates and 413 staff have recovered, 64 inmates have died). Neither Defendant nor the United States know which BOP facility Defendant would be transferred to upon his release from IDOC. Rational prison administrators would not send someone like Mr. Smith into a BOP facility housing COVID-19 infected inmates, but in light of the BOP's recalcitrant attitude toward the courts and its failure at some institutions to take meaningful steps to protect the individuals in its care, the Court cannot reject as speculative Defendant's argument that he might

be sent to a BOP facility experiencing an outbreak of COVID-19. In sum, Defendant's claim of risk of imminent harm is strengthened by the BOP's failures to: (a) prevent the spread of COVID-19 within its facilities, (b) sufficiently test its inmate population for exposure to the virus, and (c) appropriately exercise its discretion in granting transfers, furloughs, and home confinement to high-risk inmates. *See, e.g., Wilson v. Williams*, No. 4:20-cv-00794, ECF Doc. 85 at 2 (N.D. Ohio 2020) (Gwin, J.) ("Despite the preliminary injunction, Respondents have made limited efforts to reduce the COVID-19 risks for subclass members within the prison."); *id*. at 4 ("Of this 837 vulnerable population, Respondents have made only minimal effort to get at-risk inmates out of harm's way."); *id*. at 7 ("By thumbing their nose at their authority to authorize home confinement, Respondents threaten staff and they threaten low security inmates."); *see also* ECF Doc. 38 (Sixth Circuit denial of request for administrative stay); ECF Doc. 46 (Sixth Circuit denial of motion to stay); ECF Doc. 87 (notice of filing of request for stay in United States Supreme Court); ECF Doc. 95 (notice of interlocutory appeal to Sixth Circuit); *Williams v. Wilson*, No. 19A1041 (order denying stay) (U.S. May 26, 2020); *see also United States v. Rupert*, No. 10-40009, ECF Doc. 68, at 6 (C.D. Ill. May 21, 2020) (summarizing the BOP's failures with respect to its handling of the COVID-19 outbreak at FCI Elkton).

Second, Defendant's age and health place him among those more vulnerable to suffering severe complications or death from COVID-19. In his Reply, Defendant attaches medical records supporting his assertion that he received radiation treatment for prostate cancer in 2014. Doc. 25-1, at 1. According to the CDC, those over the age of 65 and those who are immunocompromised from cancer treatment are at a higher risk for severe illness from COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited May 27, 2020). In light of the above, the Court finds Defendant has established

extraordinary and compelling reasons justifying a sentence reduction.

**The § 3553(a) Factors**

Even if Defendant shows extraordinary and compelling reasons justifying his early release, the Court must still assess the appropriateness of release through consideration of the § 3553(a) factors. 18 U.S.C. § 3582(b). These factors include, *inter alia*, "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," *id.* § 3553(a)(2)(A); "the need for the sentence imposed to afford adequate deterrence to criminal conduct," *id.* § 3553(a)(2)(B); and "the kinds of sentences available." *Id.* § 3553(a)(3).

The United States argues Defendant presents a risk of danger to the community if released. Doc. 24, at 27. In support, the United States points to Defendant's six DUI convictions and his violation of the terms of his federal supervised release for an underlying drug conspiracy and failure to return convictions. *Id.* The United States thus concludes early release of Defendant Smith would endanger the community and be inconsistent with the § 3553(a) factors. *Id.* at 28.

Conversely, Defendant argues in his Motion and Reply that the Court should find the time Defendant Smith has already served is sufficient to satisfy the purposes of sentencing. Doc. 22, at 17. Further, Defendant points to his post-sentencing conduct—it appears Defendant received a 6-month sentence reduction in the IDOC based on his good behavior and the exigencies surrounding the COVID-19 pandemic. Doc. 25, at 1–2. He also notes he served 22 months of his 30-month federal sentence, and assuming he serves 85% of that sentence, he would soon be eligible for placement at a halfway house or home confinement. Doc. 22, at 2.

Here, the Court believes the § 3553(a) factors weigh strongly in favor of Defendant's

early release. First, while the Court recognizes the seriousness of driving while intoxicated, the offense giving rise to Defendant's revocation was a nonviolent state offense.[1] Second, Defendant has served 22 months—almost three-quarters—of his 30-month federal sentence, and his lengthy state court sentence for the same conduct is due to expire in a few days. When the Court revoked Defendant's supervised release and sentenced him to a term of imprisonment to run concurrent with his state court sentence, it thought his term of imprisonment in the IDOC was sufficient. In light of the COVID-19 pandemic, it appears the IDOC subsequently reduced Defendant's state court sentence by six months. Had this Court known Defendant's state court sentence would be reduced at the time it sentenced him, it likely would have imposed a lesser concurrent sentence to account for this reduction. Finally, the Court believes the United States' concerns for public safety are overstated and can be sufficiently addressed through careful supervision of Defendant while on supervised release. Accordingly, given Defendant's age, his history and characteristics, the circumstances of the offense, the amount of time Defendant has already served, and his medical condition, the Court believes a sentence reduction to time served would be consistent with the § 3553(a) factors and further finds Defendant is not likely to endanger the public if released.

For the reasons set forth above, the Court grants Defendant's Motions for Compassionate Release. Docs. 19, 22. Upon his release from IDOC, Defendant shall self-isolate for at least 14 days at his fiancé's residence in Urbana, Illinois, which the Probation Office has indicated is a suitable residence. Doc. 23. Further, the Court modifies the terms of Defendant's supervised release to include a 90-day period of home confinement.

---

[1] The Court does not comment on Defendant's 5 prior DUI convictions, but notes the violation report accompanying the sentencing recommendation stated the arrest was the result of a traffic stop wherein Defendant was arrested for DUI and subsequently charged with felony aggravated DUI. Doc. 7.

## CONCLUSION

For the reasons set forth above, Defendant's Motions (Docs. 19, 22) to Reduce Sentence Pursuant to 18 U.S.C. § 3582 are GRANTED.

It is FURTHER ORDERED that:

1. Defendant's revocation sentence in Case No. 09-20014 is reduced to time-served;

2. Upon his release from IDOC custody, Defendant shall immediately quarantine or self-isolate at his fiancé's residence in Urbana for at least 14 days;

3. Defendant's term of supervised release shall begin immediately upon his release and shall include a period of home detention for 90 days;

4. Defendant shall be monitored by location monitoring, GPS monitoring, or telephonic monitoring as approved by the U.S. Probation Office; and

5. Defendant is required to contact the probation within 48 hours of his release.

Signed on this 28th day of May, 2020.

s/ James E. Shadid  
James E. Shadid  
United States District Judge